IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RUEBEN W.,[1]                                                    Case No. 6:19-cv-00889-JR

        Plaintiff,

                                     OPINION AND ORDER

           v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.
_____

RUSSO, Magistrate Judge:

        Plaintiff Rueben W. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying his applications for Title II Disability

Insurance Benefits and Title XVI Supplemental Security Income. All parties have consented to

allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R.

Civ. P. 73 and U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is

reversed and this case is remanded for the immediate payment of benefits.

_____

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the
non-governmental party or parties in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

## BACKGROUND

Born in 1977, plaintiff alleges disability beginning April 8, 2010, due to bilateral hand burns caused by anhydrous ammonia. Tr. 194, 223, 669-70. On July 17, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 39-70. On August 17, 2012, the ALJ issued a decision finding plaintiff not disabled. Tr. 17-25.

Plaintiff subsequently appealed that decision to this Court. On January 15, 2015, the parties stipulated to a remand for further proceedings in order to obtain additional testimony from plaintiff and reevaluate the medical opinion evidence, including the opinions of Reuben Beezy, M.D., and Kent Walker, M.D. Tr. 717-18.

A second ALJ hearing was held on October 18, 2018. Tr. 657-87. At that hearing, plaintiff amended his applications to inhere to a closed period of disability, from the alleged onset date through June 15, 2013. Tr. 665-66. However, that hearing terminated prematurely due to technical difficulties. Tr. 616. Accordingly, a third ALJ hearing was held on February 28, 2019. Tr. 614-56. On March 14, 2019, the ALJ issued a decision finding plaintiff not disabled from April 8, 2010, through June 15, 2013. Tr. 594-605. After the Appeals Council denied his timely request for review, plaintiff filed a complaint in this Court.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity during the closed period at issue. Tr. 597. At step two, the ALJ determined the following impairments were medically determinable and severe: "status post bilateral hand chemical burns with finger amputations and status post right big toe transplant

surgery." Tr. 598. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Id.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that, during the adjudication period, plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R § 404.1567(b) and 416.967(b) except:

> he could not climb ladders, ropes or scaffolds. He could occasionally crawl and frequently, but not continuously, balance. He could occasionally be exposed to vibration and extreme cold temperatures. He could occasionally handle with the non-dominant left hand. He could not finger with the non-dominant left hand. He could frequently, but not continuously, handle and finger with the dominant right hand.

Id.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 603. At step five, the ALJ concluded, based on the VE's testimony, that plaintiff could perform a significant number of jobs in the national economy despite his impairments, such as a pricing marker, furniture rental consultant, and courier. Tr. 604.

## DISCUSSION

Plaintiff argues the ALJ erred by rejecting the medical opinions of his treating doctor (Dr. Walker), the medical expert who testified at the 2012 hearing (Dr. Beezy), and the state agency consulting sources (Neal Berner, M.D., and Richard Alley, M.D.).[2] Essentially, plaintiff maintains that the medical evidence, across the board, evinces that he was more restricted due to his left hand

---

[2] Plaintiff also argues that the ALJ failed to find him disabled at step three under Listings 1.08 and 8.08, wrongfully rejected his subjective symptom testimony, and ignored the third-party statements. Pl.'s Opening Br. 3-5, 13-18 (doc. 13). Because the medical opinion evidence is dispositive in this case, the Court need not address the other issues raised by plaintiff on appeal. Nonetheless, the Court notes that, to the extent relevant, this evidence supports the medical providers' statements regarding the extent of plaintiff's functional limitations.

surgeries during the closed period at issue than reflected in the RFC, such that the ALJ's step five finding is invalid and remand for the immediate payment of benefits is appropriate. Pl.'s Opening Br. 13, 18-19 (doc. 13).

At the time of the ALJ's decision, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinions of treating doctors are accorded greater weight than those of examining doctors, and the opinions of examining doctors are entitled to greater weight than those of a non-examining doctors. Id.

To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons, supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be discredited by specific and legitimate reasons, supported by substantial evidence. Id. To reject the opinion of a non-examining doctor, the ALJ must reference "specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998).

Following his April 8, 2010, injury, plaintiff was admitted to the hospital for treatment. Tr. 283-87. On May 3, 2010, plaintiff underwent surgery to amputate the fingers that had been damaged by chemical burns – namely, all digits on his left hand, except the pinky finger, as well as "the right fifth digit." Tr. 294-97. Thereafter, plaintiff sought routine and intermittent post-surgical care; during these appointments, plaintiff reported chronic hand pain. Tr. 352-61.

On October 6, 2010, Dr. Berner reviewed the record and offered an opinion regarding plaintiff's functional abilities. In relevant part, Dr. Berner opined that plaintiff could never handle or finger with his left hand. Tr. 86.

On October 8, 2010, plaintiff initiated care with Dr. Walker. Tr. 374. On November 15, 2010, Dr. Walker completed a "Manipulative Limitations [RFC] Questionnaire," in which he endorsed pain and reduced grip strength in plaintiff's left hand due to his amputation surgery. Tr. 363. As a result, in regard to plaintiff's left hand, Dr. Walker opined that plaintiff could reach or finger "0%" of an 8-hour workday, and grasp, turn, or twist objects "5%" of an 8-hour workday. Tr. 364.

On January 18, 2011, Dr. Alley reviewed the record and concurred with Dr. Berner's opinion, reaffirming that plaintiff could perform "no [handling or fingering with his left] hand." Tr. 100.

On April 27, 2011, plaintiff underwent a second surgery to transfer his right great toe to the left thumb position, after which he engaged in routine post-operative care and a course of occupational therapy, which was completed in October 2011. Tr. 392-93, 443, 447, 451, 1133-36. Plaintiff's final occupational therapy notes reflect that he continued to struggle with chronic pain, but that it was improving, as was "the functional strength and endurance of [his left] hand." Tr. 393, 395, 1134-35. He was nonetheless "still unable to pinch a ziplock bag or hold a pan," and it was "a challenge [to] push . . . his toddler's stroller or a grocery cart with [his left] gross grasp to assist." Id.

On March 14, 2012, Dr. Walker completed a "Medical Report" form in support of plaintiff's application for disability benefits. Tr. 389-90. Dr. Walker described plaintiff's left-handed symptoms as "chronic pain, stiffness, swelling [and] weakness," noting that plaintiff was only "30-50% improved since [his] last surgery." Tr. 389. In the "Prognosis" section, Dr. Walker wrote: "[Plaintiff] has reached maximum medical improvement. He will have permanent disability of [the left] hand." Tr. 390. As such, Dr. Walker indicated that plaintiff needed to "avoid physical

labor, repetitive or fine motor work" with his left hand. Id. Finally, Dr. Walker opined plaintiff

would miss 2 days of work a month due to "pain flare ups." Id.

On July 17, 2012, Dr. Beezy was called as a medical expert at plaintiff's first hearing. Tr.

44. Dr. Beezy testified that he had reviewed the medical records and described plaintiff's left-

handed history as "status post amputation" and "right great toe [transplant] to a left thumb," with

"residual symptoms of neuropathic pain." Tr. 45. In terms of functional limitations, Dr. Beezy

testified as follows:

> A: [Plaintiff] only has use of the right hand, so essentially he can be viewed as a
> one-handed worker. The left hand is practically useless. And I thought he could use
> the right hand at some type of work at a sedentary level[.] And he's limited in
> push/pull of the left upper extremity.

> Q: Why are you limiting him to sedentary work, doctor?

> A: Because I feel that he can't lift the requisite poundage in other types of work.

Tr. 46.

The ALJ rejected the medical opinions of Drs. Walker, Beezy, Berner, and Alley.

Specifically, concerning Dr. Walker's 2010 left-handed limitations, the ALJ found that his opinion

was inconsistent with the record in light of his own treatment notes, and the fact that plaintiff's

surgeon "stopped giving [him] pain medication" following the May 2010 surgery and "did not

indicate [plaintiff] had such extreme limitations." Tr. 602-03. Concerning Dr. Walker's 2012

opinion, the ALJ found it "vague" and again cited to Dr. Walker's own treatment notes. Tr. 603.

Regarding Dr. Beezy, the ALJ discredited this opinion "as to the sedentary exertion level"

because it was not compatible with plaintiff's daily activities during the adjudication period or

plaintiff's "work . . . as a dishwasher" in 2013. Id. The ALJ, however, did not comment on or

otherwise implicitly address Dr. Beezy's limitation to one-handed work.

Finally, the ALJ rejected the left-handed limitations of the state agency consulting sources because "the evidence does not show a complete inability to handle on the left" given the occupational therapy notes, which reflected "some [increase in] function"; plaintiff's "use [of] his left hand to some degree when he worked at the the Salvation Army"; and plaintiff's return to "work . . . as a dishwasher." Tr. 602.

As an initial matter, the Commissioner has not cited to, and an independent review of the record does not reveal, any evidence that plaintiff had use of his left hand, even in a limited capacity, or was otherwise capable of working from the date of his injury through the recovery period of his second surgery. See generally Def.'s Resp. Br. (doc. 14). The minimal daily activities cited by the ALJ that post-date September 2011 – i.e. assisting a friend with a construction project on one occasion, limited childcare activities, and a sheltered workshop with the Salvation Army in 2012 – are neither contrary to the medical record nor indicative of the physical ability to perform work-related activities consistent with the RFC on a regular and continuing basis. Tr. 597-603; see also White v. Astrue, 2012 WL 171001, *3 (D. Or. Jan. 20, 2012) (RFC is the most a claimant can do on a sustained basis – i.e., "8 hours a day, for 5 days a week, or an equivalent schedule" – and "complete incapacity [is not required to be found] disabled") (citations omitted).

Rather, the record reflects that these activities were performed essentially one-handed and with accommodations. See, e.g., Tr. 400, 411, 602, 623-24, 628-29, 639, 641, 678-81. Stated differently, as discussed above, beyond the increase in left-handed functional strength and endurance obtained through occupational therapy, there is no indication that plaintiff experienced medical improvement during the closed period at issue. Tr. 45-46, 389-440, 539.

Turning to the remaining reasons cited by the ALJ, Dr. Walker's treatment notes, although sparse, are not inconsistent with his medical opinion. Tr. 365-78, 529-90, 1022-61. Notably, Dr.

Walker listed "hand pain" and "neuropathy" as "chronic" problems, and his examinations consistently revealed "am[p]uta[t]ion and scar tissue" on plaintiff's left hand, along with left-handed "[s]mall finger deform[ity] with scar retraction in flexion." Id. Post-transplant surgery, Dr. Walker also documented plaintiff's "foot pain," "scar tissue," and "[f]eeling of instability present which is affecting gait." See, e.g., Tr. 529; see also Tr. 546 (Dr. Walker denoting in July 2011 that plaintiff was "still having pain and limping," such that he needed physical therapy "to be able to walk normally"). In addition, Dr. Walker prescribed plaintiff narcotics and other medications in relation to his left hand (and subsequently his right foot) on a monthly basis, which belies the ALJ's intimation that plaintiff's pain and associated functional limitations were not significant following his initial surgery. Tr. 365-78, 529-90, 603, 1022-61.

Moreover, the fact that plaintiff returned to work in mid-2013, after the adjudication period ended, does not in any way undermine the medical opinions rendered between 2010 and 2012.[3] Plaintiff concedes that he experienced medical improvement following the closed period at issue, which allowed him to engage in full-time work as a dishwasher. Tr. 597, 625-26, 683; Pl.'s Opening Br. 2 (doc. 13). Plaintiff nonetheless endorsed ongoing pain during the initial period in which he was working, as well as the need to take extra breaks and pain medication. Tr. 626. Similarly, plaintiff's treatment notes from late 2012 and early 2013 illustrate that plaintiff's hand and foot pain were chronic, such that medications were routinely prescribed for pain management. Tr. 1022-51, 1115. As such, the ALJ's reliance on this reason is legally insufficient given the

---

[3] There is some ambiguity in the record concerning when in 2013 plaintiff returned to work in a full-time capacity. See, e.g., Tr. 626-27, 1115. Even the ALJ recognized that plaintiff's "exact start date is unclear." Tr. 598. Regardless, because the ALJ explicitly found at step one that plaintiff "did not earn SGA during May and June 2013," the Court treats June 15, 2013, as the date plaintiff effectively started working. Tr. 597-98; see also Tr. 627, 683 (ALJ acknowledging at the second and third hearings that plaintiff went back to work "after the, the closed period has ended").

record before the Court. See Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) ("neither the Social Security Act nor regulations direct the SSA to treat an applicant's employment after a claimed period of disability as evidence against the applicant's claim").

In sum, the ALJ committed harmful legal error in evaluating the medical opinion evidence, such that remand is warranted. See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the court's discretion. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The court nevertheless may not award benefits punitively. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

In this case, the ALJ erred by failing to provide legally sufficient reasons, supported by substantial evidence, for discrediting the opinions of Drs. Walker, Beezy, Berner, and Alley. The record plainly demonstrates that plaintiff experienced debilitating disruption to his work-related functioning as a result of his left-hand injury during the adjudication period. See Dean M. v. Comm'r of Soc. Sec. Admin., 2020 WL 1673330, *4 n.3 (D. Or. Apr. 6, 2020) ("ALJ's rejection of every favorable treating, examining, and consulting source may suggest a lack of meaningful consideration of the record") (citation omitted).

Furthermore, there is no evidence in the record that casts serious doubt on plaintiff's putative disability. In fact, the evidence that the Commissioner relies on is either circular or irrelevant. See Def.'s Resp. Br. 13 (doc. 14) (arguing that "serious doubt" exists because "the opinions of Drs. Beezy, Berner, and Alley support that [plaintiff] can perform some kind of full-time work without the use of his left hand," and plaintiff "proved he could work despite his permanent impairments by returning to work as a dishwasher, saying that his thumb was working well and he could walk a mile at a time"). Lastly, although plaintiff's left hand and right foot experienced medical improvement as of June 2013 or slightly before, there is no indication that he regained the ability to work on a regular and continuing basis prior to the end of the closed period at issue.

Thus, the record has been fully developed and there are no outstanding issues left to be resolved. Indeed, this case has already been remanded for further proceedings at the District Court level and a medical expert has been consulted. The VE also testified that either of the following circumstances would preclude competitive employment: the same RFC but with a sedentary exertional level, or missing one or more workdays per month. Tr. 651-54. Therefore, the Court, in its discretion, credits the improperly rejected evidence as true and finds plaintiff disabled.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for the immediate payment of benefits during the closed period at issue.

IT IS SO ORDERED.

DATED this 15th day of July, 2020.


_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge